**EASTERN SERVICE MANAGEMENT COMPANY, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 10372.**

United States Court of Appeals Fourth Circuit.

Argued May 6, 1966.

Decided June 15, 1966.

---

Walter H. Fleischer, Attorney, Department of Justice (John W. Douglas, Asst. Atty. Gen., Morton Hollander, Attorney, Department of Justice, and Terrell L. Glenn, U. S. Atty., on brief), for appellant.

David W. Robinson, II, Columbia, S. C. (A. McConnell Faucette, Jr., Faucette & Faucette, and Robinson, McFadden & Moore, Columbia, S. C., on brief), for appellee.

Before BOREMAN and J. SPENCER BELL, Circuit Judges, and FIELD, District Judge.

J. SPENCER BELL, Circuit Judge:

This is a suit under the Tucker Act, 28 U.S.C.A. § 1346(a)[1], to recover for the breach of a contract for cleaning a federal office building in Chamblee, Georgia. The plaintiff was awarded a one year maintenance contract in the amount of $40,438.38 as a result of competitive bidding. The contract has been successfully performed. In the original invitation for bids the General Services Administration described the building as follows:

> "Total space to be serviced consists of approximately 111,174 square feet of occupied space, 18,126 square feet of unoccupied space, 42,700 square feet

---

[1] "§ 1346(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims of:

&ast; &ast; &ast; &ast; &ast;

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in any case not sounding in tort."

of warehouse space and 6,000 square feet of cafeteria dining space. This building is occupied by the Internal Revenue Service."

Four months later an addendum was issued changing the paragraph to read:

"Total space to be serviced consists of approximately 129,300 square feet of office space, 47,700 square feet of warehouse space and 6,000 square feet of cafeteria dining space. This building is occupied by the Internal Revenue Service."

The government admits that the office space to be cleaned was actually 8,700 square feet larger than indicated in the amended invitation. The error having been caused by a failure to include in the occupied office space the area of corridor, lobby and rest room space. Plaintiff contended that the government's voluntary inclusion of area measurements constituted a warranty as to the size of the building. Upon cross motions for summary judgment the district court granted the motion of the plaintiff and gave judgment for $8,164.62 plus interest from April 15, 1964. We find the judgment properly granted as to liability for breach of contract but improperly granted as to the measure of damages and interest.

The government concedes that there is only one issue on the question of whether or not the contract was breached. "In our view, on the question of liability, the only real issue is whether the actual footage in the building, 186,700 square feet, could be said to 'approximate' the amount in the Invitation to Bid, 178,000 square feet." This assumes that the inclusion of statistics constitutes a warranty and brings into question whether this warranty was breached.

The meaning of the word "approximately" can only be understood in the light of the type of contract involved and the reliance which a reasonably intelligent bidder would place on the accuracy of the figure. Cf. Gottlieb Contracting Co. v. United States, 353 F.2d 777, 778 (2 Cir. 1965). There is no question as to the factual situation submitted to the court. There can be no doubt that square footage is a material factor in computing the cost of cleaning a building. Both the contractor and the government testified [2] as to their use of these figures in formulas for computing the cost of various types of cleaning operations. Though the government testimony seeks to downgrade their importance it should be noted that the contract itself uses square footage as the *sole* criterion for determining the allowance to be granted the government for office space left vacant [3] and consequently requiring only minimal cleaning service from the contractor. [4]

There is further undisputed testimony that it is not the practice in the industry to measure a building before bidding but rather to rely on the figures provided by the government. We must presume that the General Services Administration had knowledge of this general reliance. General Services Administration could not help but know, and would have testified to it, if contractors generally measured the buildings under their control upon which invitations for bids had been issued. The government cannot avoid this reliance by instructing bidders to visit the building "to ascertain the nature and location of the work, and the general and

2. The parties agreed that for the purpose of these motions that the court could make use of testimony made in a prior hearing in this controversy before the Board of Contract Appeals of the General Services Administration.

3. "During the year some office space will not be occupied. * * * The contractor offers to reduce his base bid in the amount per month of $.02 per square foot for the unoccupied area. When the space is oc-

cupied the above amount will be added to the amount paid to the contractor."
 The average price per square foot on the contract is $.018 per month.

4. "SPECIFICATIONS
 "1 WORK TO BE DONE
 * * * * *
 "G. The services to be performed every thirty days shall include the following:
 "(1) Sweep mop all unoccupied spaces initially and once every 30 days on the last Friday of each month."

local conditions which can affect the work and the cost thereof." See United States v. Lundstrom, 139 F.2d 792, 794 (9 Cir. 1943); Hollerbach v. United States, 233 U.S. 165, 172, 34 S.Ct. 553, 58 L.Ed. 898 (1914). Indeed that same instruction stated "The Government will assume no responsibility for any understanding or representations concerning conditions * * * *unless included in the invitation for bids,* * * *." (Emphasis supplied.) It is further to no avail to argue that "even knowing *exactly* what the footage in the building was would give Eastern only a rough idea of its costs." Because the burden was on the contractor to ascertain other elements of the cost and the area figure alone was not sufficient is no excuse for not expecting it to be relied upon. Cf. Railroad Waterproofing Corp. v. United States, 137 F.Supp. 713, 716, 133 Ct.Cl. 911 (1956).

The government seeks support from cases involving the sale of tracts of land, e. g., Queen v. Sisk, 238 N.C. 389, 78 S.E. 2d 152 (1953); Eastland v. Robinson, 233 Ky. 403, 25 S.W.2d 1028, 70 A.L.R. 365 (1930); Thorp v. Smith, 344 F.2d 452 (3 Cir. 1965), and identified goods, e. g., United States v. Hathaway, 242 F. 2d 897 (9 Cir. 1957); American Elastics, Inc. v. United States, 187 F.2d 109 (2 Cir. 1951), cert. denied, 342 U.S. 829, 72 S.Ct. 53, 96 L.Ed.2d 627, contending that this contract is to clean an *identified building*, not a specific area. The cases relied upon are distinguishable on their facts. They involve the transfer of the entire interest in the property involved. It is not, as here, where the property involved is merely the measure of the service to be performed and the contract is for an insignificant amount relative to the described property.

The amount of space involved here is not trivial. Both the government and the contractor testified that contracts are awarded for areas whose total space is less than the understatement involved here. The use of "approximately" is only to provide against accidental variations arising from slight and unimportant excesses or deficiencies. See Brawley v. United States, 96 U.S. 168, 172, 24 L.Ed. 622 (1817). The error of over 6% in the occupied area is not mere rounding off or measurement error, but is caused by neglecting to include a significant portion of the building area in the computation.

In light of the importance of the figure and the general reliance of bidders we find the conclusion of the district judge that the variance of 8,700 square feet is not within the term "approximately 129,300 square feet" to be proper. Cf. Moore v. United States, 196 U.S. 157, 167–168, 25 S.Ct. 202, 49 L.Ed. 428 (1905).

We think, however, that the district court erred in the assessment of damages. The damages appear to have been based on the actual cost of cleaning the areas left out of the figures in the Invitation, i.e., the lobby, corridor and rest room.[5] This standard is improper for two reasons: First, the standard should not be the areas that caused the error. The Invitation did not allocate the office space area by type of use. It was up to the contractor to ascertain the relative amounts of various types of cleaning operations included in the office space area. Even cursory inspection of the building would indicate the presence of lobbies, corridors and rest rooms. The cause of the error did not damage him, it was that the error was there in the total figure. If actual cost is used it should be the cost of cleaning 8,700 square feet at the average cost per square foot of office space. Second, and more important, actual expense over estimated expense is not the proper standard. The proper test would be the lesser of the reasonable cost of cleaning the additional area of average office space or the amount additional that the contractor would have bid according to the formula used by the contractor in bidding this job had he known the true

---

5. If the damages allowed represented the average cost of cleaning office space then the cost of cleaning 129,300 square feet would be in excess of $120,000.

size of the building. This compensates the contractor for the damage suffered by the understatement of the true area. It puts him in the position he would have been in had the error not been made.

 The granting of interest prior to the judgment is incorrect. 28 U.S.C.A. § 2411(b) and 31 U.S.C.A. § 724a.

The decision of the district court is affirmed in part and the case remanded for the computation of damages in accordance with this opinion.

Remanded.